# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAFAYETTE DIVISION

| | |
|---|---|
| **MICHAEL G. DURAND** | **CIVIL ACTION NO. _____** |
| **VERSUS** | **JUDGE _____** |
| **ONEBANE LAW FIRM APC WELFARE BENEFITS PLAN, LOUISIANA HEALTH SERVICE AND INDEMNITY COMPANY (BLUE CROSS/BLUE SHIELD OF LOUISIANA) AND LAFAYETTE GENERAL MEDICAL CENTER, INC.** | **MAGISTRATE JUDGE _____** |

**COMPLAINT FOR PAYMENT OF BENEFITS UNDER 29 U.S.C. § 1132 AGAINST ONEBANE LAW FIRM APC WELFARE BENEFITS PLAN, AN ERISA PLAN, AND LOUISIANA HEALTH SERVICE AND INDEMNITY COMPANY (BLUE CROSS/BLUE SHIELD OF LOUISIANA) AS PLAN & CLAIMS ADMINISTRATOR OF BENEFITS UNDER THE PLAN AND FOR ATTORNEY FEES AND COSTS, AND DECLARATORY JUDGMENT ACTION AGAINST LAFAYETTE GENERAL MEDICAL CENTER, INC. FOR DECLARATION OF RIGHTS UNDER CONTRACTS BETWEEN PLAN PARTICIPANT AND MEMBER AND THE PLAN PREFERRED PROVIDER, AS WELL AS FOR DAMAGES, PENALTIES, COSTS  AND ATTORNEY FEES PURSUANT TO THE SUPPLEMENTAL JURISDICTION OF THIS COURT  UNDER LAW, INCLUDING 28 U.S.C. § 1367**

**NOW INTO COURT,** appearing herein pro se as Complainant, comes and appears MICHAEL G. DURAND ("Complainant"), a person of the full age of majority and a resident of and domiciled in the Parish of Lafayette, Louisiana, a Plan Member and Participant and Beneficiary under the ONEBANE LAW FIRM APC WELFARE BENEFITS PLAN ("Plan"), an ERISA plan, who seeks a declaration and payment of benefits due and payable under the Plan, which have been wrongfully denied to Complainant by the Plan as well as the Claims Administrator of the Plan, LOUISIANA HEALTH SERVICE AND INDEMNITY COMPANY (BLUE CROSS/BLUE SHIELD OF LOUISIANA) ("BCBS"), as more fully set forth below, and

further who seeks a declaration of rights between Complainant, the Plan, BCBS and LAFAYETTE GENERAL MEDICAL CENTER, INC. ("LGMC") pursuant to agreements between Complainant and the Plan, LGMC, and BCBS as well as between BCBS and LGMC, as well as damages, as more fully set forth below:

1.

This cause arises under the federal statutory scheme known as ERISA, 29 U.S.C.A. §§1001, et seq.  Jurisdiction is proper pursuant to ERISA, 29 U.S.C.A § 1132(e), as well as 28 U.S.C.A. §1331.  Supplemental jurisdiction (sometimes referred to as pendant and pendant party jurisdiction) against LGMC is present in this matter.  See, 28 U.S.C.A. §1367(a).

2.

Venue is proper in this district as this is the district where the plan is administered, where the breach of the Plan or ERISA took place, and where a defendant resides or may be found.  29 U.S.C. §1132(e)(2).

3.

Complainant is a person of the full age of majority residing in and domiciled in the Parish of Lafayette, Louisiana.  In addition to the declaratory relief and damages sought as described below, Complainant seeks relief under 29 U.S.C.A § 1132(a)(1)(B) to recover benefits due to him under the Plan, to enforce his rights under the Plan and to clarify his rights to future benefits under the Plan, as well as under 29 U.S.C.A § 1132(a)(3) for equitable relief to the extent not otherwise provided.

4.

Defendant BCBS is a Louisiana corporation with its registered office in East Baton Rouge Parish, Louisiana.  BCBS also has offices in Lafayette Parish, Louisiana.  Its registered

agent for service of process is Michelle S. Calandro, 5525 Reitz Avenue, Baton Rouge, LA 70809.

5.

Defendant ONEBANE LAW FIRM APC WELFARE BENEFITS PLAN ("Plan") is an ERISA plan in accordance with 29 U.S.C.A. §§1001, et seq.  The Plan is located and administered in the Parish of Lafayette, Louisiana.  The benefits sought under the Plan were payable in Lafayette, Louisiana.  Pursuant to the terms of the Plan, the Plan may be served through The Onebane Law Firm, APC, 1200 Camellia Blvd Ste 300, Lafayette, LA 70508.

6.

Defendant LGMC is a Louisiana corporation domiciled in and with its registered office in the Parish of Lafayette, State of Louisiana.  Its registered agent for service of process is Gordon E. Rountree, Jr., 920 W. Pinhook, Lafayette, LA 70503.

7.

Complainant, at all relevant times was, and continues to be, a "participant" or, alternatively, a "beneficiary" of an employee benefit plan within the meaning of ERISA §§ 3(7), (8), 29 U.S.C.A. §§ 1002(7), (8).

8.

BCBS is an "administrator" of the employee benefit plan within the meaning of ERISA § 3(16), 29 U.S.C.A. § 1002(16) and is a fiduciary of the plan within the meaning of ERISA § 3(21)(A), 29 U.S.C.A. § 1002(21)(A).2.  BCBS is the named fiduciary and claims fiduciary responsible for administrating and determining benefits under the Benefit Program and Plan for all health insurance benefits under the Plan, and has full authority and discretion under the Plan to interpret the terms of the Benefit Program, including full, complete and sole authority to make

the determination of what benefits are due under the Plan and the BCBS health and medical benefits policy secured for Plan members pursuant to the Plan.

9.

When an insurer is designated as having full administration and discretionary authority to determine whether or not and to what extent benefits are administered to and payable for members, then the insurer is a proper defendant in a case brought under ERISA to determine if benefits have been wrongfully withheld or denied.  *Hill v. Aetna*, 546 F. Supp 343, 348 (S.D. Miss. Jackson Div. 2008).

10.

BCBS exercises actual control over the benefits claims process and as such is a proper defendant in an action such as this concerning ERISA benefits.  *LifeCare Management Services LLC v. Insurance Management Administrators, Inc.*, 703 F. 3rd 835, 844-845 (5th Cir. 2013).

11.

The Plan is a proper defendant pursuant to ERISA. It is a separate legal entity capable of being sued.  29 U.S.C. Sec. 1132(d)(1).

12.

The Plan is being included as a defendant as case law suggests that it must be a defendant in a claim under ERISA for benefits, and that "it would be silly not to name the Plan as a defendant in an ERISA suit."  *Mein v. Carus Corp.,* 241 F. 3d 581, 585 (7th Cir. 2001).

13.

However, Complainant avers that neither the Plan itself, nor the employer or anyone else other than BCBS had any role in the determination of entitlement to or benefits due, under the Plan, apart from LGMC, to the extent and in the manner shown below.

14.

Further, the need for the inclusion of the Plan as a Defendant does not mean that the Plan is the only proper Defendant. *Mein*, *id*.

15.

Claimant avers that the Sponsor/Employer does not oppose the payment of the benefits under the insurance policy issued by BCBS as prayed for herein, but has no say in the decision under the Plan or otherwise, that authority expressly belonging exclusively under the policy and the Plan to BCBS, and practically to LGMC as a Preferred Provider under the Plan, and which possesses the sole ability to provide BCBS with the requirements necessary for BCBS to process the benefits under the policy and the Plan due to Complainant.

16.

As will be shown below, LGMC has failed to provide a valid request for payment to BCBS for the service rendered and under consideration in this matter that complies with their contract with Complainant and law, a medical procedure at LGMC on March 22, 2016, despite numerous notifications and demands by Complainant and BCBS to do so.

17.

Despite these repeated requests and demands, LGMC continually advised BCBS and Complainant that the procedure for removal of the gallbladder was a bariatric procedure caused by morbid obesity, which is excluded under the policy issued by BCBS.

18.

LGMC sent numerous statements to Complainant, and BCBS also send statements to Complainant, advising that the service was not covered because it was a bariatric procedure.

3457252.1

19.

Following each such request, Complainant advised both LGMC and BCBS that their information was incorrect and that the bariatric surgery had already been paid for by Complainant and that Complainant was aware that bariatric procedures were not covered under the policy.  Complainant was led to believe by LGMC that these attempts at billing by LGMC for the surgery were errors which attempted to seek insurance coverage for a procedure excluded under the policy and which Complainant had already paid for out of pocket.  LGMC, on each such occasion, advised Complainant to ignore the notice or bill and that it would be straightened out by the LGMC billing department.

20.

It was not until December 5, 2016, that Complainant was told by LGMC and BCBS that a new bill from LGMC, this time for $18,989.00, "included" the gallbladder surgery.  It was at that time that Complainant was advised that LGMC was not attempting to erroneously rebill for the uncovered bariatric procedure, but instead was attempting to include a completely new and extremely large amount for the procedure to remove the gallbladder which took place at the same time as and during the gastric sleeve procedure.

21.

The gallbladder procedure, deemed medically necessary by the operating physician, took approximately five minutes more than the procedure would have taken had it been solely to perform the gastric sleeve procedure.  Complainant had suffered a serious, life-threatening attack due to the diseased gallbladder days earlier which required that he be treated at that time on an emergency basis.  Following that procedure, Dr. Jacob Karr, who performed the emergency

procedure, agreed with Dr. Dennis Eschete, Complainant's treating physician, that the gallbladder needed to be removed.

22.

On December 6, 2016, Complainant was advised by LGMC that LGMC had cancelled their original claim for $18,989.00 and that LGMC had called BCBS to discuss this "billing issue" with BCBS.  Complainant's wife was told that LGMC would send by facsimile – or send via "Link Blue" – the itemized hospital bills that were being requested by BCBS, and would also send a copy of these same two bills to Complainant by mail.

23.

LGMC now advised that the coding on the previous requests for payment were incorrect and that a new coding would be submitted for the removal of the gallbladder.  A bill with a coding for gallbladder surgery did not, however, occur until April of 2017, when a "properly coded" request for benefits was sent by LGMC to BCBS.

24.

Many differing reasons were given by BCBS for denying the claim each time LGMC submitted a new request for payment, including that it was a non-covered bariatric procedure, that it was not authorized by the provider before the surgery as well as other reasons.   However, most recently BCBS said that it required medical records to see if the procedure was medically necessary before it could authorize the benefits to be paid to LGMC.

25.

This position by BCBS, that it needs the medical records to determine medical necessity, is either a gross oversight or unreasonable refusal to pay benefits due to or on behalf of the

Complainant, and is arbitrary, capricious and without reasonable basis and an abuse of discretion.

26.

BCBS previously authorized payment to the surgeons who removed Complainant's gallbladder in the March 22, 2016 hospitalization at LGMC, Drs. Eschete and Gachassin, without any question as to the medical necessity of the procedure to remove the gallbladder.

27.

Subsequently, Complainant personally secured and sent all of his medical records to BCBS at his own cost which clearly demonstrate that the procedure was necessary due to a diseased gallbladder which days before the procedure had caused jaundice and could have resulted in death if the treatment had not been undertaken, including a clearing of the common bile duct days earlier.  That treatment was followed by the surgical removal of the gallbladder once the imminent danger had passed.

28.

Dr. Dennis Eschete, the primary treating physician, advised Complainant prior to March 22, 2016 and after the emergency procedure days earlier that he would remove the gallbladder during the gastric sleeve procedure as that made the most sense medically and eliminated the risk of a second surgery for Complainant.

29.

Dr. Eschete has since advised that the actual time to remove the gallbladder took approximately five additional minutes in the operating theater (where the bariatric procedure took place), involved no additional surgical instruments, no additional medications and no

additional items that could possibly reflect the amount of the charges that are currently being sought by LGMC.

30.

Complainant has also advised LGMC that the amounts being claimed and now sought by LGMC for the gallbladder removal are arbitrary, capricious, unreasonable, and may constitute a double charge for services and procedures and fees, or alternatively an overcharge for such services, procedures and fees, for the reasons more fully set out below.

31.

Complainant contracted with LGMC for and subsequently received bariatric services on March 22, 2016 consisting of a gastric sleeve procedure performed by Dr. Dennis Eschete, one of his physicians.

32.

Complainant was fully aware that the gastric sleeve procedure was not a covered procedure and was excluded under the BCBS policy.

33.

For that reason, Complainant did not ask for payment for the gastric sleeve surgery under the BCBS policy but paid for all costs associated with the hospital stay at LGMC and all services in connection with the gastric sleeve procedure out of pocket and with his own personal funds.

34.

Pursuant to his contract with LGMC, the pre-paid amount actually paid by Complainant was the only amount due to LGMC for the hospital room, the hospital stay, the surgery, the medications and everything else required in connection with the gastric sleeve procedure.

35.

-9-

Complainant asserts that the amount that LGMC is now attempting to charge Complainant for the gallbladder procedure is not simply arbitrary, capricious and unreasonable, but shocks the conscience, as it in essence is an attempt to extract tens of thousands of dollars for an additional five minutes in the operating room at LGMC with no reasonable, legal or contractual basis for the charges.

36.

Over the past few months, LGMC has claimed that the following differing amounts are owed by BCBS and Complainant for the gallbladder procedure:

a.     $10,327.00;

b.     $18,989.00;

c.     $34,272.00;

d.     $34,271.00;

d.     $63,898.00, and

e.     numerous other amounts that are present in the administrative record.

37.

Complainant was unable to secure a response from LGMC despite numerous requests as to the exact nature and amount of the claimed charges for the gallbladder procedure. Complainant then went to LGMC's billing office in person on March 10, 2017 and secured from LGMC copies of the bills in existence at the time claimed by LGMC to be the itemized bill for the bariatric surgery and the itemized bill for the gallbladder removal.

38.

A comparison of the charges on the bariatric surgery bill with the gallbladder bill provided by LGMC to Complainant on March 10, 2017 revealed that both bills appeared to be charging for:

a.      being anesthetized during each surgery;

b.      two operating rooms;

c.      two separate doses of Enoxaparin (Lovenox) which exceeded by 100% the maximum allowed daily dose of the drug;

d.      two separate SCD Express Kambia Thigh sleeve sets;

e.      two separate Sensor BIS XP systems;

f.      two separate ABO and RH groupings;

g.      other duplicate charges as shown on the statements sent by LGMC to BCBS and which are in the administrative record.

39.

None of the above services and procedures was performed or provided twice.  They were only performed or provided once and were paid for by the prepayment by Complainant in full for the bariatric procedure under Complainant's written agreement with LGMC for the bariatric procedure.

40.

However, if the bills provided by LGMC to Complainant on March 10, 2017 are correct as represented by LGMC at that time, LGMC is now attempting to charge for those products and services twice and perhaps more, once for the bariatric procedure and once for the gallbladder procedure.

41.

Complainant had no written contract with LGMC for the payment of any specific additional charges unrelated to the bariatric surgery.

42.

It was represented to Complainant that the gallbladder would be removed during the bariatric procedure as that was the safest and easiest means to effect that necessary procedure, and would result in no additional cost.

43.

Complainant has now been told on at least one occasion by BCBS that LGMC never sought authorization for the admission for gallbladder surgery from BCBS, although at other times BCBS has told Complainant that the denial was not for lack of pre-authorization.  That claim was resolved by BCBS by determining that the member (Complainant) would have no responsibility for any charges to LGMC under the contracts that LGMC had entered into other than the deductible or co-pay under the BCBS policy because of the failure of LGMC to seek pre-authorization for the gallbladder procedure.

44.

Under the Plan, the insurance policy and the contract between BCBS and LGMC for payment of benefits, it is LGMC and not the patient who must secure authorization from BCBS for a hospital admission and procedure.

45.

Under both the contract between BCBS and LGMC, and also pursuant to the Plan and the insurance issued by BCBS, if the provider is a Network Provider, a Participating Provider or a

Preferred Provider, it is the Provider who must obtain Authorization for the patient's admission and procedures.

46.

LGMC is a Network Provider, a Participating Provider or a Preferred Provider under the Plan, all contracts it entered into with BCBS and the policy issued by BCBS.

47.

As noted above, and in addition to this information being present in the BCBS record and website portal, BCBS has advised Complainant on at least one occasion that LGMC failed to secure authorization for the gallbladder procedure and admission.

48.

Under both the contract between BCBS and LGMC, and also pursuant to the Plan and the insurance issued by BCBS, if the provider is a Network Provider, a Participating Provider or a Preferred Provider and fails to secure authorization for an admission, and the procedure and admission is a medical necessity, then BCBS is only obligated to the provider to pay a pre-agreed rate as set forth in the contract between BCBS and LGMC, and the participant/member (Complainant) is only responsible for the co-payment or deductible and coinsurance percentage. The provider is responsible for all charges that would otherwise have been covered.

49.

Complainant is a third party beneficiary of the contracts between BCBS and LGMC, and is entitled to the benefits intended to be conferred upon the patient pursuant to such agreements. The provisions referenced above constitute stipulations pour autrui in favor of Complainant.

50.

By referring to the contracts between LGMC and BCBS in the Plan and the insurance policy, BCBS incorporated those provisions into the Plan and the insurance policy by reference, and Complainant is entitled to enjoy the benefits of the agreements as if it were a direct party to the agreements.

51.

Complainant has pursued all possible administrative appeals under the Plan, including administrative appeals, medical appeals and voluntary appeals.  The appeals have been either denied by BCBS or not responded to within 30 days of the date of the appeal by BCBS, and as such must be considered as denied.

52.

This suit is brought within 15 months of the original procedure which was performed on March 22, 2016 out of an abundance of caution as the policy summary issued by BCBS states that all lawsuits must be brought within that time.

53.

Complainant does not agree that this time period accurately prescribes the time frame for bringing an action for benefits under the Plan.  The Plan provides in the Section entitled "Miscellaneous Rules" at page 34 that "No lawsuit may be brought by any person or entity to recover benefits under the Plan more than three years from the date the benefits are finally denied."

54.

Neither time period, either the one in the BCBS policy summary or the one in the Plan, has passed as of the date of the filing of this lawsuit.

-14-

55.

However, Complainant asserts that the longer period set out in the Plan supersedes the time period set out in the BCBS policy.

56.

Further, while claims for benefits under ERISA are for the most part exclusively federal in nature, certain state law doctrines relating to insurance and insurance claims are not preempted by ERISA.

57.

Among the doctrines not preempted by ERISA include the doctrine of the need for an insurer like BCBS to show prejudice before relying on a procedural bar to dismiss a claim for late notice or filing of a lawsuit and also the doctrine of contra non valentem agere nulla currit praescripto, which under the facts alleged here operates to suspend the start of the running of any time limit to bring a lawsuit in this case.

58.

The repeated assurances by representatives of both LGMC and BCBS to Complainant and his wife that there was no need for any action on the part of Complainant and that this matter would be taken care of by first eliminating the bill as a duplicate bill, and then by submitting additional bills "properly coded", and that once the medical records were secured the bills would be paid, as well as other assurances given by BCBS and LGMC, lulled Complainant into a false sense of security and prevented the start of the running of any applicable prescriptive period or statute of limitation until at the earliest April 2017, when the first "properly coded" bill was sent by LGMC to BCBS.

59.

Further, the repeated contradictory statements by BCBS as to why the claim was being denied, whether they had or had not received medical records and other contradictory emails, notes and records from BCBS, coupled with the contradictory reasons given for the surgical bill by LGMC, the repeated miscoding of the bill for bariatric surgery or morbid obesity as opposed to removal of the diseased gallbladder, the bariatric surgery being fully paid for by Complainant as Complainant knew that bariatric surgery was not covered as opposed to gallbladder surgery which is covered, for many months also served to lull Complainant into a false sense of security, and prevented the start of the running of any applicable prescriptive period or statute of limitation until at the earliest April of 2017.

60.

BCBS advised Complainant on at least one occasion that after reviewing the initial bills for gallbladder surgery sent to BCBS by LGMC for review and payment, BCBS was submitting the LGMC bills to its Financial Investigations Unit or another investigative arm of BCBS to determine if the bills were excessive, duplicate billing or otherwise.  Despite repeated demands by Complainant to BCBS for the results of that investigation, BCBS has refused and/or failed to respond to those inquiries by Complainant.

61.

To the extent that the policy issued by BCBS is not consistent with the Plan document, then BCBS must be ordered to act in accord with the provisions of the Plan document, including but not limited to the provisions relating to the time within which to bring a lawsuit for benefits.

62.

To allow LGMC and BCBS to unilaterally control how billings are coded, how billings are calculated, the time frame for submitting billings and when appeals will be decided in relation to prescriptive periods or statutes of limitation in a manner that defeats the rights of the participant and beneficiary such as Complainant under an ERISA Plan, and to continually resubmit bills of incorrect and/or varying amounts and with varying descriptions that allow or require the carrier to deny the payment of benefits actually due causes irreparable harm to Complainant as well as the framework established by Congress and provided by ERISA and gives this Court additional reason to exercise supplemental jurisdiction over the claims against LGMC under federal and state law, including ERISA.  Complainant has no other remedy apart from bringing this lawsuit to enforce his rights under the Policy and the Plan.

63.

Complainant brings state law claims against LGMC as those claims are likewise subject to the supplemental jurisdiction of this Court as they are so related to the ERISA claims in the main action described above that they form part of the same case or controversy under Article III of the United States Constitution.  28 U.S.C. Sec. 1367 (a).

64.

Additionally, such supplemental jurisdiction described above as to the claims against LGMC includes claims that involve the joinder of additional parties, such as LGMC.  28 U.S.C. Sec. 1367 (a).

65.

Pursuant to F.R.C.P. Rule 57 and 28 U.S.C. 2801, Complainant, in addition to seeking payment of benefits due under the Plan and the policy, as well as suing for damages, attorney

fees and costs against BCBS and LGMC, seeks a declaration of the rights and legal relations between Complainant and LGMC under all contracts between Complainant and LGMC, between LGMC and BCBS and under law.

66.

LGMC had no other written agreement with Complainant for a specific amount other than the contract for bariatric services, and all amounts due under that contract have been paid. As such, LGMC is owed nothing by Complainant for the surgical procedures that took place on March 22, 2016.

67.

Additionally, and only in the event this Court finds that Complainant owes anything to LGMC, then the billing practices and amounts billed by LGMC constitute a violation of La. R.S. 22:1871, et seq., ("Balance Billing Act), which prohibits LGMC from collecting or attempting to collect from an insured patient any amount (1) owed by the health insurer, or (2) in excess of the contracted reimbursement rate.  The amounts being sought from Complainant are owed by the health insurer, regardless of whether the health insurer unjustifiably refuses to pay the amounts due, and also those amounts sought by BCBS are in excess of the contracted reimbursement rate between BCBS and LGMC.

68.

La. R.S. 22:1874, in pertinent part, prohibits a health care provider from collecting or attempting to collect amounts from an insured patient in excess of the contracted reimbursement rate:

A. (1) A contracted health care provider shall be prohibited from discount billing, dual billing, attempting to collect from, or collecting from an enrollee or insured a health insurance

issuer liability or any amount in excess of the contracted reimbursement rate for covered health care services.

(2) No contracted health care provider shall bill, attempt to collect from, or collect from an enrollee or insured any amounts other than those representing coinsurance, copayments, deductibles, noncovered or noncontracted health care services, or other amounts identified by the health insurance issuer on an explanation of benefits as an amount for which the enrollee or insured is liable.

(3) However, in the event that any billing, attempt to collect from, or the collection from an enrollee or insured of any amount other than those representing copayment, deductible, coinsurance, payment for noncovered or noncontracted health care services, or other amounts identified by the health insurance issuer as the liability of the enrollee or insured is based on information received from a health insurance issuer, the contracted health care provider shall not be in violation of this Subsection.

69.

Complainant has a private cause of action against LGMC under this statute, the Health Care and Consumer Billing and Disclosure Protection Act.  *Anderson v. Ochsner Health System and Ochsner Clinic Foundation*, 172 So. 3d 579 (La. 2014).

70.

Additionally, according to the Louisiana Supreme Court, the statute incorporates the provisions of La. R.S. 51:1401, et seq., the Unfair Trade Practices and Consumer Protection Law, which, among other functions: (1) provides a right of action to any person who suffers an ascertainable loss as a result of another person's use of unfair trade/commercial practices; and (2)

allows for substantial penalties, including but not limited to, treble damages, attorney fees, and costs.

71.

The state Balance Billing Act's reference to and incorporation of these Unfair Trade Practices and Consumer Protection provisions serve to illustrate the legislature's intention of exposing violators to more liability, not less. The Louisiana Supreme Court has held that it would be incongruent to rule that a law intended to punish violators and protect consumers would operate in a manner that prohibits an individual's access to the courts to redress the very violation that is proscribed. Accordingly, it found that the legislative intent supports the existence of a private right of action to sue under La. R.S. 22:1877. *Anderson v. Ochsner Health System and Ochsner Clinic Foundation*, 172 So. 3d 579, 584 (La. 2014).

72.

LGMC's repeated attempts to bill and ultimately hold Complainant liable for an amount that is grossly excessive given the services provided for the gallbladder procedure and clearly in excess of the amount covered by the contracted billing agreement for covered services, whether paid by the carrier or not, constitutes a contracted health care provider, LGMC, engaging in discount billing, dual billing, as well as attempting to collect from, or collecting from an enrollee or insured a health insurance issuer liability or any amount in excess of the contracted reimbursement rate for covered health care services for covered services.  LGMC's remedy, if it is entitled to one, is against BCBS, not Complainant.

73.

LGMC is a contracted health care provider who has demanded or received payment from an enrollee or insured for an amount which it is prohibited from billing or collecting by R.S.

22:1874(A).  It is required by state law to correct its billing within forty-five days of service of the notice of unfair trade practices.  LGMC has failed to do so.

74.

LGMC, by its breach of contract, act, omissions, negligence and fault caused or will cause Complainant to lose coverage under the Plan and the policy for a valid covered procedure, namely the removal of his gallbladder and the insurance issued under the Plan, despite repeated requests and direction from Complainant once it became clear that LGMC was seeking additional funds for the gallbladder procedure, to properly file a claim with BCBS so as to secure agreement from BCBS to pay the bills from LGMC for the gallbladder surgery pursuant to the Plan and the insurance policy issued by BCBS.  To date, LGMC has failed, either negligently or intentionally, to do so, and has thereby caused or will cause Complainant to lose his health care benefits to which he was otherwise entitled to under the Plan and the insurance policy issued pursuant to the Plan.

75.

These failures by LGMC resulting in Complainant being harmed as set forth in the paragraph immediately above bars LGMC from proceeding against Complainant for, or claiming from Complainant, any amounts related to the gallbladder procedure, or alternatively entitle Complainant to an offset for any amounts which LGMC claims Complainant owes to LGMC for the gallbladder procedure due to the breaches of contract by LGMC as well as their fault, negligence intentional conduct or violation of law.

76.

Additionally, the above actions by LGMC constitute violations of the state Balance Billing Act, entitling Complainant to penalties under the Act, including but not limited to, treble damages, attorney fees, and costs for each violation.

77.

Complainant was entitled to rights and benefits under the terms of the employee benefit plan as set forth above and has been unjustifiably denied those benefits.   Complainant is therefore entitled to judgment decreeing that all reasonable amounts for the gallbladder procedure billed by LGMC are covered under Complainant's ERISA Plan and the policy issued by BCBS and therefore are payable by BCBS to LGMC.

78.

Inextricably related to the question presented here under ERISA as to whether BCBS must pay all reasonable benefits are the questions of whether the bills presented by LGMC to BCBS for the gallbladder surgery were and are reasonable or otherwise payable, whether the services which are the subject of the bills were medically necessary, whether the bills constitute overcharges or double-charges previously paid for by Complainant for the non-covered bariatric procedure (the gastric sleeve), whether or not BCBS determined after it referred some or all of the LGMC bills to its Financial Investigations Unit or any other investigative arm of BCBS, that the bills were appropriate, valid, reasonable in amount and legal or not, and given the above whether the bills should be paid by BCBS under the Plan and its insuring agreement, and all other questions necessary for the Court to determine whether the benefits under the ERISA plan and at issue in this lawsuit are payable by BCBS or, alternatively, the Plan.

79.

Further, Complainant is entitled to a judgment against LGMC that it has breached its agreements with Complainant entitling Complainant to damages for the breach, violated the provisions of the ERISA plan, and that it is additionally in violation of the state Balance Billing Act, entitling Complainant to penalties under the Act, including but not limited to, treble damages for all amounts billed but not payable in violation of the state act and all other provable damages suffered by Complainant under the state act, as well as for attorney fees, and costs for each violation.

80.

Complainant seeks all allowable benefits, damages and costs, including without limitation costs and attorney fees, against BCBS, LGMC or, alternatively, the Plan.

81.

Based on the amounts cited by LGMC in its billings to BCBS and Complainant, the damages to Complainant from LGMC could range from $10,327.00 to $63,898.00, not including treble damages, attorney fees and costs.

82.

Further, to the extent that this Court determines that ERISA does not provide a remedy to Complainant under the statute, Complainant asserts that all Defendants are liable to Complainant, and that Complainant is entitled to all remedies it seeks herein and plead in this Complaint, pursuant to federal common law, as each of the allegations of Complainant as to the claims against each Defendant establishes questions of common law of central concern to ERISA, and establishes the right to bring such claims under the jurisdiction of 28 U.S.C.A. § 1331.  If ERISA provides no statutory remedy for these claims, the federal common law does, as

there must be some mechanism to redress the failure of a medical policy insurer under ERISA to provide benefits for a commonly covered gallbladder procedure that is obviously and clearly covered under a plain reading of the terms of the policy at issue but which has been unjustifiably denied by the carrier, BCBS.

83.

Further, to the extent that this Court determines that ERISA does not provide a remedy to Complainant under the statute, Complainant asserts that it is a matter of common law of central concern to ERISA that a remedy be provided to establish for the purposes of ERISA when a provider has billed amounts that are excessive, unreasonable and not reasonably related to the medical service provided, or otherwise in violation of contract or law, and therefore such federal common law establishes the right to bring such claims for resolution under the jurisdiction of 28 U.S.C.A. § 1331.

84.

Additionally, to the extent ERISA does not provide a remedy to Complainant for the BCBS insurance policy essentially precluding Complainant from bringing an action in state or federal court for benefits because the need for an administrative appeal did not start to run until a bill for services for the gallbladder services was issued, and that was too late for the administrative, medical and voluntary appeals to run their course, and because BCBS has delayed responding to the appeals filed before the lapse of the 15 month period referenced in its policy, the federal common law provides such a remedy, and the period within which a lawsuit must brought must be tolled until a reasonable time after BCBS issues final rulings on Complainants administrative, medical and voluntary appeals and provides notice to Complainant of same.

85.

Further, Complainant avers that the evidence to be considered by the Court under ERISA for the benefits and remedies claimed pursuant to ERISA may be limited to this Court's review of the administrative record.

86.

Complainant is unable to determine which, if any, of Complainant's as well as LGMC's submissions to BCBS are included in the administrative record, as Complainant has been given different reports as to whether its and LGMC's submissions were received, were not received, or what exactly is in the administrative record maintained by BCBS.

87.

So that this Court can have a complete administrative record before it to make the decisions it is to make in this matter, Complainant seeks an Order directing the administrative record in these matters to be produced by BCBS within a reasonable time and before submission of this case for judgment, and that to the extent the following documents are not included in the administrative record, that the Court allow Complainant to supplement the administrative record so that it will be complete, and to order BCBS and LGMC to produce the following to supplement the administrative record:

a.      all submissions by Complainant to LGMC and BCBS including, without limitation, all requests for benefit payment, all requests for bills for both the bariatric procedure and the gallbladder procedure, all requests for itemization of all charges under all bills for procedures taking place on March 22, 2016, all medical records for all procedures taking place on March 22, 2016, all emails to BCBS and LGMC regarding these matters, and all emails from BCBS and LGMC in regard to these matters;

-25-

b.      any referrals by BCBS of any of the billings by LGMC to the BCBS Financial Investigations Unit or any other investigative arm of BCBS and any and all results of such investigations;

c.      every bill submitted to BCBS by LGMC;

d.      all appeals and evidence submitted in conjunction with all appeals by Complainant to BCBS for all denials of benefits, and all written notifications made to Complainant of the results of such appeals;

e.      all records of all appeals and evidence submitted in conjunction with all appeals by Complainant to BCBS for all denials of benefits, and all evidence that there were any written notification to Complainant of the appeals within 30 days of the submission of the appeal;

f.      the total amount LGMC claims it is owed for the gallbladder surgery from Complainant, and if a different amount is claimed to be owed from BCBS, that amount;

g.      the reasons BCBS claims that the payment for the gallbladder surgery is not covered;

h.      any and all other documentation which this Court or the parties believe is necessary to complete the administrative record to allow for a fair resolution of the claims and defenses of all parties.

87.

Pursuant to 29 U.S.C.A § 1132(h), since this matter may involve claims and remedies other than those set forth under 29 U.S.C.A § 1132(a)(1)(B), a copy of this complaint is being served upon the Secretary of Labor and the secretary of the Treasury by certified mail at the following addresses:

U.S. Department of Labor            U.S. Department of the Treasury
Office of the Solicitor             Office of the General Counsel

Room N-4611                     Room 3000
200 Constitution Avenue, N.W.   1500 Pennsylvania Avenue, N.W.
Washington, D.C. 20210          Washington, D.C. 20220

WHEREFORE, Complainant Michael G. Durand prays for the following relief from this Court against BCBS, LGMC and alternatively, the Plan:

1.      a declaration that the bills submitted by LGMC to both BCBS and to Complainant, if they are owed at all, are due and payable by BCBS and the Plan, and not by Complainant ;

2.      a declaration that the Complainant has fulfilled his contract with LGMC for bariatric services and that no further payment is owed to LGMC for those services or services carried out at the same time;

3.      a declaration that no further amounts are due LGMC from either BCBS or Complainant for the gallbladder procedure;

4.      a declaration that the amounts being claimed by LGMC for the gallbladder procedure are arbitrary, capricious, unreasonable, a double charge for previously paid for services and procedures, and double-billing as well as an overcharge for such services and procedures;

5.      a declaration that under the contract between BCBS and LGMC and also pursuant to the Plan and the policy issued by BCBS, LGMC failed to secure pre-authorization for the gallbladder procedure as required of it, and as such as it is a Network Provider, a Participating Provider or a Preferred Provider, the failure to secure authorization renders BCBS only obligated to LGMC to pay the pre-agreed rate as set forth in the contract between BCBS and LGMC, and Complainant is

only responsible, if for any amount at all, for the co-payment or deductible and coinsurance percentage; LGMC is responsible for all other charges;

6.      a declaration that Complainant is a third party beneficiary of the contracts between BCBS and LGMC, and is entitled to the benefits intended to be conferred upon the patient pursuant to such agreements;

7.      a declaration that BCBS has failed to properly respond to the inquiries from Complainant, and that BCBS be ordered to respond in writing as to each bill submitted by LGMC for the gallbladder procedure: a) whether it is covered, b) how much is covered, c) if not covered, the specific reasons, including relevant policy provisions, it is not covered, d) whether BCBS submitted, and which ones were submitted, the bills sent to it by LGMC to the BCBS Financial Investigations Unit or another investigative arm of BCBS to determine of the bills were excessive, duplicate billing, unreasonable or otherwise, and therefore unpayable under the BCBS policy, and if so what the results of that investigation was/were;

8.      a declaration that Complainant has no other agreement with LGMC for a specified amount other than the contract to provide bariatric surgery on March 22, 2016, and that all payments owed have been made by Complainant to LGMC;

9.      a declaration that the billing practices and amounts sent or billed by LGMC to Complainant constitute a violation of La. R.S. 22:1871, et seq., ("Balance Billing Act), which prohibits LGMC from collecting or attempting to collect from an insured patient any amount (1) owed by the health insurer, or (2) in excess of the contracted reimbursement rate, and that the amounts being sought from

Complainant by LGMC are owed by BCBS and also are in excess of the contracted reimbursement rate.

10.    a declaration that LGMC is in violation of La. R.S. 22:1874 which prohibits  a health care provider from collecting or attempting to collect amounts from an insured patient in excess of the contracted reimbursement rate;

11.    a declaration that La. R.S. 22:1871, et seq. incorporates the provisions of La. R.S. 51:1401, et seq., the Unfair Trade Practices and Consumer Protection Law, and that LGMC has caused Complainant to suffer an ascertainable loss as a result of LGMC's use of unfair trade/commercial practices such that LGMC is responsible to Complainant for damages as well as substantial penalties, including but not limited to, treble damages, attorney fees, and costs, all as provided for in the statutes;

12.    a declaration that LGMC's continued billing of greatly differing amounts for the gallbladder constitutes a violation of its duty to correct its billing within forty-five days of notice of its unfair trade practices, and that it has failed to do so;

13.    a declaration that LGMC, by its breaches of contract, acts, omissions, negligence and fault, should this Court declare Complainant has no benefits due or coverage under the Plan or the policy issued by BCBS for a valid and otherwise covered procedure, namely the removal of his gallbladder, despite repeated requests and direction from Complainant once it became clear that LGMC was seeking additional funds for the gallbladder procedure, caused Complainant's loss of benefits and coverage under the BCBS policy, and therefore LGMC is owed nothing by Complainant for those services;

14.     a declaration that the above actions by LGMC constitute violations of the state Balance Billing Act, and entitle Complainant to penalties under the Act, including but not limited to, treble damages, attorney fees, and costs for each violation, in an amount to be determined by the Court;

15.     a declaration that the above actions by LGMC constitute violations of the federal common law, and entitle Complainant to damages and penalties in an amount to be determined by the Court;

16.     a declaration that the bills presented by LGMC to BCBS for the gallbladder procedure were and are unreasonable, overcharges, not allowed by law and/or duplicate billing for procedures, services and products, including medications and related items, previously paid for by Complainant;

17.     a declaration that the services in connection with the gallbladder procedure which are the subject of the bills submitted by LGMC were medically necessary;

18.     a judgment against BCBS, the Plan and LGMC that each of them has violated the provisions of the ERISA plan and the policy of insurance issued by BCBS pursuant to the Plan, as well as their contracts with Complainant, and that benefits and amounts sought in this Complaint are entitled to be awarded to Complainant and/or the debt alleged by LGMC to be owed to it be declared to be owed and fully satisfied by the Plan, BCBS and LGMC, and not the Complainant;

19.     a judgment in favor of Complainant awarding Complainant all allowable benefits, plus damages and costs, including without limitation costs and attorney fees, against LGMC, BCBS or, alternatively, the Plan, which based on the amounts cited by LGMC in its billings to BCBS and Complainant include damages

between $10,327.00 and $63,898.00, not including treble damages, attorney fees and costs;

20. a judgment against LGMC for treble damages, attorney fees and costs for violation of La. R.S. 22:1871, et seq.

21. an order to supplement the administrative record in this matter in the following particulars:

    a.    all submissions by Complainant to LGMC and BCBS including, without limitation, all requests for benefit payment, all requests for bills for both the bariatric procedure and the gallbladder procedure, all requests for itemization of all charges under all bills for procedures taking place on March 22, 2016, all medical records for all procedures taking place on March 22, 2016, all emails to BCBS and LGMC regarding these matters, and all emails from BCBS and LGMC in regard to these matters;

    b.    any referrals by BCBS of any of the billings by LGMC to the BCBS Financial Investigations Unit or any other investigative arm of BCBS and any and all results of such investigations;

    c.    every bill submitted to BCBS by LGMC;

    d.    all appeals and evidence submitted in conjunction with all appeals by Complainant to BCBS for all denials of benefits, and all written notifications made to Complainant of the results of such appeals;

    e.    all records of all appeals and evidence submitted in conjunction with all appeals by Complainant to BCBS for all denials of benefits, and all

evidence that there were any written notification to Complainant of the appeals within 30 days of the submission of the appeal;

f.     the total amount LGMC claims it is owed for the gallbladder surgery from Complainant, and if a different amount is claimed to be owed from BCBS, that amount;

g.     the reasons BCBS claims that the payment for the gallbladder surgery is not covered;

h.     any and all other documentation which this Court or the parties believe is necessary to complete the administrative record to allow for a fair resolution of the claims and defenses of all parties.

AND FOR ALL GENERAL AND EQUITABLE RELIEF.

Respectfully submitted,


s/Michael G. Durand
Michael G. Durand (# 05223)
1200 Camellia Boulevard (70508)
Suite 300
Post Office Box 3507
Lafayette, LA 70502-3507
(337) 237-2660
(337) 266-1232 FAX
durandm@onebane.com
Participant
Appearing Pro se

**Service Information:**

Onebane Law Firm APC Welfare Benefits Plan
The Onebane Law Firm APC
1200 Camellia Blvd, Suite 300
Lafayette, LA 70508

Louisiana Health Service and Indemnity Company (Blue Cross/Blue Shield Of Louisiana)
Through its registered agent for service of process:
Michelle S. Calandro
5525 Reitz Avenue
Baton Rouge, LA 70809

Lafayette General Medical Center, Inc.
Through its registered agent for service of process
Gordon E. Rountree, Jr.
920 W. Pinhook
Lafayette, LA 70503

U.S. Department of Labor
Office of the Solicitor
Room N-4611
200 Constitution Avenue, N.W.
Washington, D.C. 20210

U.S. Department of the Treasury
Office of the General Counsel
Room 3000
1500 Pennsylvania Avenue, N.W.
Washington, D.C. 20220

3457252.1